IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DUSTY H.,[1]**

                          Plaintiff,            Civ. No. 6:20-cv-00839-MK

     v.                                   **OPINION AND ORDER**

**ANDREW SAUL**, Acting
Commissioner of Social Security

                          Defendant.

_____

**KASUBHAI, District Judge:**

      Plaintiff Dusty H. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in May 1991, Plaintiff was 25 years old when he applied for SSI benefits on March 2, 2017. Plaintiff has a high school education and has past work experience as a metal washer. Tr. 24. He alleges disability as of September 1, 2013, due to major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and a history of attention deficit hyperactivity disorder (ADHD). Tr. 18.

Plaintiff's claim for SSI was denied initially and upon reconsideration. He requested an administrative hearing, which was held on March 12, 2019, before an administrative law judge (ALJ). Tr. 15. In a written decision dated April 11, 2019, the ALJ denied Plaintiff's claim for benefits. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-6. This appeal followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. Davis v. Heckler, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. See 20 C.F.R. § 404.920(a)(4) (2012). The burden of proof rests upon the claimant at steps one through four, and with the Commissioner at step five. Id.; Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. Id. If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. Id.; see also Bustamante, 262 F.3d at 953–54.

The ALJ performed the sequential evaluation. At step one, the ALJ found that Plaintiff had performed some amount of substantial gainful activity since his application date of March 2, 2017. Tr. 18. At step two, the ALJ found Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, PTSD, and a history of ADHD. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed him to work at all exertional levels with the following limitations: he can understand and remember simple instructions; he can complete simple, routine tasks for a normal workday and workweek with normal breaks; he can perform work in a very small group of no more than five people and should not work with the general public; and he would do best with hands-on demonstrations for a couple of weeks and can accept supervision delivered in a normative fashion. Tr. 20.

At step four, the ALJ found that Plaintiff was capable of performing his past work as a metal washer. Tr. 24. In the alternative, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, including the representative occupations of janitor, hand packager, and laboratory helper. Tr. 25. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 25-26.

Plaintiff contends the ALJ erred by (I) failing to develop the record; (II) improperly evaluating the medical evidence; (III) rejecting Plaintiff's subjective symptom testimony; (IV) finding that he performed substantial gainful activity during the relevant period; and (V) finding that Plaintiff could perform his past work as a metal washer.

## I.  Failure to Develop the Record

Plaintiff first argues that the ALJ failed to fully and fairly develop the record because she denied Plaintiff's request for a consultative examination to assess his full-scale IQ (FSIQ). The ALJ has a duty to "fully and fairly develop the record." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Where intellectual disability is at issue, "there is no question that a fully and fairly developed record will include a complete set of IQ scores." Garcia v. Comm'r, 768 F.3d 925, 930 (9th Cir. 2014).

Here, the ALJ was not required to further develop the record because the record was adequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459-60. The ALJ denied Plaintiff's request to order a consultative examination because Plaintiff "underwent a thorough consultative psychological examination in September 2018 and there were no indications that a FSIQ examination was required." Tr. 15. The ALJ also noted that there was adequate

evidence in the record of Plaintiff's FSIQ range. For example, a detailed psychological examination dated September, 2018 showed that Plaintiff had only "low average" intellect and "normal" thought processes. Tr. 501. Examining psychologist Pamela Miller, Ph.D., opined that Plaintiff's "thought processes seemed normal" in September 2015, that Plaintiff's "concrete reasoning was normal," and that Plaintiff "displayed adequate judgment and insight." Tr. 313. Dr. Miller also found that Plaintiff "could understand and remember simple instructions" and could "understand more complicated instructions." Tr. 313. She declined to diagnose intellectual disorder. Other record evidence, including a treatment from May 2017 stating that Plaintiff had "[n]o learning barriers," confirms the ALJ's conclusion that Plaintiff had no serious learning barriers or intellectual disorders. Tr. 520, 527-28, 536. On this record, it was reasonable for the ALJ to determine that intellectual disability was not at issue in this case. The ALJ therefore did not have a duty to order further intellectual testing in order to fully and fairly develop the record. Mayes, 276 F.3d at 459-60.

Plaintiff argues that testing from his childhood suggests that he may have an intellectual disorder, citing testing from 2002 that suggests Plaintiff's intelligence was below average. Tr. 275-89. At the time, Plaintiff's Verbal IQ range was 66-77, his Performance IQ was 72-86, and his Full-Scale IQ was measured at 67-77. As Plaintiff points out, however, these scores were obtained when Plaintiff was 11 and were superseded by more recent psychological evaluations in the record. Tr. 313, 501, 520. Further, Plaintiff did not allege intellectual disability in his application for benefits. Tr. 69-70, 191. On this record, the ALJ properly weighed the relevant evidence from the period at issue and reasonably ruled out intellectual disability. The ALJ's decision not to further develop the record was not error. Mayes, 276 F.3d at 459-60.

## II.   Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly evaluated the opinions of examining psychologists Dr. Miller and K. Mansfield-Blair, Ph.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 1. Examining Psychologist Pamela Miller, Ph.D.

Dr. Miller examined Plaintiff in September 2015 in connection with a prior application for benefits. Tr. 311-14. She opined that Plaintiff would have difficulties adapting to changes and

maintaining attention and concentration for short periods of time. Tr. 313. She also opined that Plaintiff could remember and understand simple instructions. Tr. 311-14.

The ALJ gave Dr. Miller's opinion significant weight but rejected her finding that Plaintiff would have difficulties adapting to changes and maintaining attention for "short" periods of time as vague. Tr. 23. The ALJ may reject a medical opinion that fails to "provide useful statements regarding the degree of [a claimant's] limitations." Ford v. Saul, 950 F.3d 1141, 1156. Here, the ALJ noted that Dr. Miller's only explanation of this portion of her opinion stated that Plaintiff "struggles to adapt to change," but did not articulate specific limitations that could be incorporated into Plaintiff's RFC beyond limiting Plaintiff to simple, routine tasks and simple instructions. Tr. 20. Because the ALJ incorporated the latter limitations into the RFC, she reasonably accounted for Plaintiff's difficulties in adapting to changes and maintaining attention and concentration. Tr. 20. On this record, the ALJ reasonably translated Dr. Miller's opinion regarding Plaintiff's ability to adapt to changes and maintain attention into limitations that she included in the RFC. Ford, 950 F.3d 1156.

### 2. Examining Psychologist K. Mansfield-Blair, Ph.D.

Plaintiff next argues that the ALJ improperly rejected the opinion of examining psychologist Dr. Mansfield-Blair. Dr. Mansfield-Blair opined in September 2019 that Plaintiff would have difficulty maintaining regular attendance and completing a normal workday or workweek without interruptions from untreated depression. Tr. 498-503. She also found that Plaintiff would be able to perform simple, repetitive tasks, accept instructions from supervisors, interact with co-workers and the public, and perform work activities on a consistent basis without special or additional instructions. Id. The ALJ gave significant weight to this opinion but rejected the limitation that Plaintiff would have difficulty showing up for a regular workweek. Tr. 22.

As a first reason for rejecting Dr. Mansfield-Blair's limitation on Plaintiff's ability to show up for work, the ALJ found that this opinion relied heavily upon Plaintiff's subjective complaints, which the ALJ rejected. Tr. 22. The ALJ "may reject a treating physicians' opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ reasonably inferred that Dr. Mansfield-Blair based this limitation on Plaintiff's subjective complaint that he has a "really hard time" going into public places. As discussed below, the ALJ properly discounted Plaintiff's testimony. The ALJ thus provided a legally sufficient reason to reject part of Dr. Mansfield-Blair's opinion. Tommasetti, 533 F.3d at 1041.

The ALJ also found that Dr. Mansfield-Blair's opinion was contradicted by other evidence in the record, including Plaintiff's self-reported employment history. Tr. 22. The ALJ may reject a physician's opinion that is not consistent with the overall record. Ghanim, 763 F.3d at 1161. Here, Plaintiff worked for three months at Finish Line while he was incarcerated and reported that this job ended only because Plaintiff's work-release program had ended, not because of his untreated depression. Tr. 499. As Plaintiff explained, this "was a work-release job when I got out of prison and I left when it was done." Tr. 499. This evidence suggests that Plaintiff was able to attend and complete his work regularly despite his untreated depression, contrary to Dr. Mansfield-Blair's opinion that Plaintiff would have difficulty maintaining attendance and completing a normal workday/workweek without interruptions. Tr. 502. Although Plaintiff argues that he nevertheless had difficulties completing his work at Finish Line, the ALJ's evaluation of the conflicting evidence was reasonable. Tr. 41, 499. On this record, the ALJ provided legally sufficient reasons for rejecting part of Dr. Mansfield-Blair's opinion. Ghanim, 763 F.3d at 1161.

### III. Subjective Symptom Testimony

Plaintiff next argues the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

Here, the ALJ rejected Plaintiff's testimony to the extent it conflicted with the RFC. Tr. 22. She noted that Plaintiff's allegations conflicted with his own statements and with the medical evidence in the record. Tr. 22. A claimant's inconsistent statements are legally sufficient reasons to discount allegations of disabling limitations. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Contradiction with the medical record is also sufficient basis for rejecting a claimant's subjective symptom testimony. Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, while Plaintiff testified that he was fired from his last job because he couldn't understand his job duties, he informed his treating physician that he only left the job because it was part of a limited three-month work release program. Tr. 41, 499. Further, Plaintiff's consultative psychological examination findings revealed that he is able to perform abstract thinking and interpret proverbs accurately, follow a three-step command without errors, and orient to weekday, month, date, year, city, place, and situation. Tr. 21, 501. Dr. Mansfield-Blair also opined that Plaintiff would have no difficulty "performing simple and repetitive tasks given his performance on memory tasks" and that he "would not have difficulty accepting instructions from supervisors." Tr. 502. This evidence contradicts Plaintiff's testimony that he cannot work because he cannot understand and follow directions in a work setting. Carmickle, 533 F.3d at 1161.

The ALJ considered other inconsistencies in the record, including Plaintiff's testimony that he went grocery shopping only rarely because of his anxiety. Tr. 39. By contrast, Plaintiff wrote in his function report to the Agency that he enjoyed shopping for food and that he usually spent a

couple of hours shopping at a time. Tr. 213. In sum, the ALJ reasonably concluded that Plaintiff's testimony about his inability to understand simple job duties conflicted with his own statements and with the medical evidence of record regarding his mental limitations. Carmickle, 533 F.3d at 1161. The ALJ's rejection of Plaintiff's subjective symptom testimony was supported by substantial evidence in the record.

IV.     **Substantial Gainful Activity**

Plaintiff also argues that the ALJ erred when she found that Plaintiff earned income over the level of substantial gainful activity during the relevant period. At step one of the sequential evaluation, the ALJ determined that Plaintiff "earned 5,060.00 total during the first quarter of 2018, which is over the amount of substantial gainful activity for that time period." Tr. 18, 181, 186. If an individual engages in substantial gainful activity, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience; if the individual is not engaging in substantial gainful activity, the analysis proceeds to step two of the sequential evaluation process. See 20 C.F.R. § 404.920(a)(4) (2012). Here, the ALJ continued the sequential evaluation process, noting that there were times during the relevant period when Plaintiff did not earn at the level of substantial gainful activity. Tr. 18. The Court finds no error in the ALJ's evaluation of Plaintiff's earnings records; further, because the ALJ continued the evaluation process beyond step one, any error at step one was harmless.

V.      **Supervision Requirement in Past Relevant Work**

Plaintiff argues, finally, that the ALJ erred by finding that he was capable of performing his past work as a metal washer, and that his RFC is consistent with disability based upon the vocational expert (VE) testimony.

Here, the ALJ found that Plaintiff could perform a full range of work with some non-exertional limitations, finding that Plaintiff "would do best with hands on demonstrations for a couple of weeks and can accept supervision delivered in a normative fashion." Tr. 20. At the administrative hearing, the ALJ asked the VE whether a person with Plaintiff's RFC could perform his past work or other work in the national economy. Tr. 58. The VE testified that such a person could not perform any such work because of the hands-on training requirement, which he interpreted to mean that "somebody is there all the time." Tr. 58. The ALJ acknowledged that this clause of the RFC was ambiguous and clarified that a trainer would only be required "here and there" and "might be needed for the first couple of weeks." Tr. 59. With this clarification in mind, the VE testified that a person with Plaintiff's RFC could perform Plaintiff's past relevant work, and went on to identify other jobs that such a person could perform. Tr. 59. The ALJ relied upon the VE testimony in finding that Plaintiff could perform his past relevant work as well as multiple jobs that exist in significant numbers in the national economy. The ALJ's reliance upon this testimony was not error.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 4th day of May 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge